UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-CV-80177-RLR

IN RE K.J.

_____/

**ORDER GRANTING PETITION FOR RETURN OF CHILD**

**THIS CAUSE** is before the Court on Petitioner's Verified Petition, Pursuant to the Hague Convention, for Return of Child to the Country of Habitual Residence [DE 1]. The Court has carefully considered the Verified Petition and Respondent's Answer and Affirmative Defenses [DE 31] thereto. In addition, the Court held an evidentiary hearing on March 3, 2016, and is otherwise fully advised in the premises. For the reasons set forth below, the Verified Petition is **GRANTED**.

**I.  INTRODUCTION**

On February 4, 2016, Petitioner Ted Johansson filed a Verified Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 (the "Hague Convention" or "Convention"), as implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* ("ICARA"), seeking the immediate return of his eleven-year-old son K.J. to Sweden. The Court finds that K.J. was wrongfully removed from Sweden, his habitual place of residence, to the United States by his mother, Respondent Heidi Johansson Grohne a/k/a Heidi Grohne Johansson. The Court further finds that, although more than one year passed between the date of wrongful removal and the date of filing the Verified Petition, K.J. is not now settled in his new environment. Finally, the Court finds that K.J. does not object to returning to Sweden. Accordingly, the Court hereby orders that K.J. return to Sweden with Petitioner.

## II.    THE HAGUE CONVENTION AND THE ICARA

The Hague Convention, to which Sweden and the United States are signatories, "applies to children under sixteen years of age who are 'habitually resident' in a contracting state and are 'wrongfully removed' to another contracting state.'" *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) (internal citations omitted). Pursuant to the Convention,

> [a] child is "wrongfully removed" when (a) the removal "is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident," and (b) at the time of removal the rights of custody "were actually exercised" by the person having those rights. The term "rights of custody" includes "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

*Id.* (internal citations omitted).

Under this framework, Petitioner must prove by a preponderance of the evidence: (1) that K.J. was habitually resident in Sweden at the time Respondent removed him to the United States; (2) that the removal was without Petitioner's consent and constituted a wrongful breach of his custody rights under Swedish law; and (3) that Petitioner was actually exercising those custody rights at the time of the removal. *See id.*; 22 U.S.C. § 9003(e)(1)(A).

If Petitioner meets his initial burden, K.J. must be returned to Sweden "forthwith" unless Respondent establishes one of the exceptions recognized under the Hague Convention. *See Gomez v. Fuenmayor*, No. 15-12075, 2016 WL 454037, at *5 (11th Cir. Feb. 5, 2016). One such exception arises where the proceedings are commenced more than one year after the date of the wrongful removal and "the child is now settled in its new environment." Convention, Art. 12. Another arises where "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Convention, Art. 13. These exceptions are to be construed narrowly and must be proven by a preponderance of the evidence. *See Gomez*, 2016 WL 454037, at *5 (citing 22 U.S.C. § 9001(a)(4)); 22 U.S.C. § 9003(e)(2)(B).

2

### III.     FACTS AND PROCEDURAL HISTORY

Petitioner is a citizen and resident of Sweden. Respondent is a citizen of both Sweden and the United States and currently resides in Florida. The two were married in Sweden in the mid-1990s and divorced in 2010. Shortly after they married, Petitioner and Respondent resided for a brief period of time in the United States, first in Florida, then in Minnesota. The couple then returned to Sweden, where they resided for the remainder of their marriage. Following their divorce, both Petitioner and Respondent continued to reside in Sweden until Respondent left on or about August 31, 2014.

During their marriage, Petitioner and Respondent had three children. The eldest, their son T.J., was born in the United States in 1998 prior to the couple's return to Sweden. After returning to Sweden, the couple had a daughter, K.J., in 2002, followed by another son, K.J.,[1] in 2004, both of whom were born in Sweden.

Petitioner and Respondent were divorced in Sweden in 2010. Pursuant to a Swedish Court Judgment entered February 5, 2010, Petitioner and Respondent were to share custody of all three children. *See* Petitioner's Exhibit 3. The Judgment further provided that T.J. would live only with Respondent, while K.J. and the daughter K.J. would live with Petitioner and Respondent on alternating weeks. *See id.* Each Monday, the parent with whom K.J. and the daughter K.J. had spent the previous week dropped the children off at school, and the parent with whom the children were to spend the following week picked them up from school that afternoon. *See id.* This custody arrangement remained in effect without alteration from 2010 through the time Respondent removed K.J. from Sweden.

On or about August 31, 2014, Respondent left Sweden and came to the United States with

---

[1] The Court will refer to the couple's younger son, who is the subject of the Verified Petition, as "K.J.," and will refer to the couple's daughter as the "daughter" or "daughter K.J."

T.J. and K.J. Respondent neither informed Petitioner nor sought Petitioner's consent prior to leaving. Petitioner first learned that K.J. was missing on Monday, September 1, 2014, when he received a call from K.J.'s school inquiring into K.J.'s absence. Petitioner attempted to reach K.J., Respondent, and Respondent's parents—who at the time were in Sweden—by phone to locate K.J., but his calls were not answered. Petitioner also went to Respondent's apartment and to Respondent's parents' house, but again was unable to reach anyone.

After school that afternoon, the daughter K.J.—who had been left behind in Sweden by Respondent—joined Petitioner at his home. Petitioner ultimately learned from his daughter, who was a friend of T.J.'s girlfriend at the time, that Respondent, T.J., and K.J. had left Sweden for the United States.

Shortly thereafter, Petitioner learned from K.J.'s school that Respondent had emailed to inform the school that K.J. was ill but would return to school shortly. That email was sent from a different email address than that which Petitioner had used over the previous years to correspond with Respondent.[2] Knowing the statements in Respondent's email to be false, Petitioner reported Respondent's actions to the Swedish police. The Swedish authorities issued a European arrest warrant against Respondent for child abduction, which remains outstanding. *See* Petitioner's Exhibit 4.

Respondent has not returned to Sweden since leaving in August of 2014. From the time she left Sweden with T.J. and K.J. in August of 2014, through the date of filing the Verified Petition in this case, Respondent had no contact with the daughter K.J., whether by phone, email, letter, or otherwise. During the same period of time, Petitioner had no contact with Respondent, T.J., or K.J. For the majority of that time, Petitioner was unaware of their location.

On September 19, 2014, Petitioner filed an Application under the Hague Convention with

---

[2] Respondent's new email address was not disclosed to Petitioner.

the Swedish Ministry for Foreign Affairs. *See* Petitioner's Exhibit 2. On October 1, 2014, the Swedish Ministry for Foreign Affairs forwarded Petitioner's application to the U.S. Department of State. The Department of State referred the matter to pro bono legal counsel, who retained a private investigator to locate K.J. Petitioner filed his Verified Petition on February 4, 2016, shortly after confirming that K.J. was living with Respondent at an address in Delray Beach, Florida.

In his Verified Petition,[3] Petitioner included a Motion for Warrant of Arrest in Lieu of Writ of Habeas Corpus to secure K.J.'s presence in this jurisdiction pending final resolution of the Verified Petition. *See* DE 1. On February 17, 2016, the Court held an ex parte evidentiary hearing on that Motion. The following day, the Court entered a Sealed Order and Warrant of Arrest, which was executed that evening by the United States Marshals Service. *See* DE 17; DE 21. Since then, K.J. has been staying with Petitioner at an address within this jurisdiction, notice of which has been filed with the Court under seal. Petitioner's Swedish passport and K.J.'s Swedish and United States passports have been deposited in the Court Registry.

## IV.   LEGAL ANALYSIS

Petitioner has established by a preponderance of the evidence that K.J. was habitually resident in Sweden at the time Respondent removed him to the United States, that the removal was without Petitioner's consent and constituted a wrongful breach of his custody rights under Swedish law, and that Petitioner was actually exercising those custody rights at the time of the removal. Respondent has failed to establish by a preponderance of the evidence that K.J. is now settled in his new environment or that K.J. objects to returning to Sweden. The Hague Convention and ICARA therefore require that K.J. return to Sweden with Petitioner.

---

[3] Petitioner filed an Ex Parte Motion to Seal Case Filings Until Child Is Secured [DE 4] contemporaneously with the Verified Petition. *See* DE 4. Pursuant to the Court's Order Granting Motion to Seal [DE 8], all filings and proceedings in this case were sealed until K.J. had been seized by the United States Marshals Service and Respondent had been served with a copy of the Verified Petition. This case was unsealed on February 26, 2016.

### A.     K.J. Was Habitually Resident in Sweden at Time of Removal

Petitioner has established by a preponderance of the evidence that K.J. was habitually resident in Sweden at the time Respondent removed him to the United States. K.J. was born in Sweden on September 9, 2004. Prior to his removal in 2014, shortly before his tenth birthday, K.J. lived his entire life in Stockholm, Sweden. He had never resided outside of Sweden and had never visited the United States. Prior to his removal, K.J. was enrolled in a bilingual school in Stockholm where both English and Swedish were spoken. K.J. had several close friends in Stockholm, with whom he socialized after school and on weekends, and was active in a tennis club.

Respondent does not appear to dispute that K.J. was habitually resident in Sweden at the time she removed him to the United States. In her Answer and Affirmative Defenses, Respondent admitted Petitioner's allegation that "[i]mmediately before the wrongful removal or retention of KJ from Sweden, KJ habitually resided in Sweden within the meaning of that term under Article Three of the Hague Convention." *See* Verified Petition, DE 1 ¶ 44; Answer, DE 31 ¶ 44. Moreover, Respondent did not present any evidence to the contrary during the evidentiary hearing held March 3, 2016. Finally, in her Post Evidentiary Hearing Proposed Findings of Fact and Conclusions of Law, Respondent included a finding that Petitioner has established this element. *See* DE 41 at 2.

### B.     Removal Breached Petitioner's Custody Rights Under Swedish Law

Petitioner has established by a preponderance of the evidence that K.J.'s removal from Sweden was without Petitioner's consent and constituted a wrongful breach of Petitioner's custody rights under Swedish law. Pursuant to a Swedish Court Judgment entered February 5, 2010, Petitioner and Respondent were to share custody of K.J., and K.J. was to reside with Petitioner every other week. *See* Petitioner's Exhibit 3. Petitioner was unaware of and did not consent to K.J.'s removal from Sweden prior to the removal. Since learning that K.J. was removed

6

from Sweden, Petitioner has actively pursued K.J.'s return through appropriate legal channels. *See* Petitioner's Exhibit 2.

Respondent does not appear to dispute Petitioner's rights of custody. In her Answer and Affirmative Defenses, Respondent admitted Petitioner's allegation that Petitioner "had and has rights of custody over KJ within the meaning of Articles Three and Five of the Hague Convention, in that he is a joint custodial parent under the Swedish custody order." *See* Verified Petition, DE 1 ¶ 45; Answer, DE 31 ¶ 45. Moreover, Respondent did not present any evidence to the contrary during the evidentiary hearing held March 3, 2016. Respondent likewise failed to contradict Petitioner's testimony that he was unaware of Petitioner's plans to remove K.J. from Sweden and did not consent to the removal. Finally, in her Post Evidentiary Hearing Proposed Findings of Fact and Conclusions of Law, Respondent included a finding that Petitioner has established this element. *See* DE 41 at 2.

**C.      Petitioner Was Exercising Custody Rights at Time of Removal**

Petitioner has established by a preponderance of the evidence that he was actually exercising his custody rights at the time of the removal. As provided for in the Swedish Court Judgment entered February 5, 2010, K.J. regularly lived at Petitioner's home every other week, and Petitioner expected K.J. to arrive at his home on the very day he learned that Respondent had removed him from Sweden.

Respondent does not appear to dispute that Petitioner was exercising his custody rights at the time of removal. In her Answer and Affirmative Defenses, Respondent admitted Petitioner's allegation that Petitioner, "at the time of the wrongful removal or retention, was actually exercising his rights of custody within the meaning of Articles Three and Five of the Hague Convention by, among other things, caring for KJ at his home on alternating weeks." *See* Verified

7

Petition, DE 1 ¶ 46; Answer, DE 31 ¶ 46. Moreover, Respondent did not present any evidence to the contrary during the evidentiary hearing held March 3, 2016. Finally, in her Post Evidentiary Hearing Proposed Findings of Fact and Conclusions of Law, Respondent included a finding that Petitioner has established this element. *See* DE 41 at 2.

### D.     Respondent Has Not Established an Exception

Because Petitioner has met his initial burden, K.J. must be returned to Sweden "forthwith" unless Respondent establishes one of the narrow exceptions recognized under the Hague Convention. The Court concludes that Respondent has failed to establish either that K.J. is now settled in his new environment or that K.J. objects to returning to Sweden.[4]

#### 1.   K.J. Is Not Settled in the United States

Article 12 of the Hague Convention states the general rule that when a petition for return is filed within one year after the child's wrongful removal, the Court "shall order the return of the child forthwith." Article 12 further provides that "where the proceedings have been commenced after the expiration of the period of one year . . . [the Court] shall also order the return of the child, unless it is demonstrated that the child is now settled in [his] new environment." Respondent must establish by a preponderance of the evidence that this exception applies. *See* 22 U.S.C. § 9003(e)(2)(B).

It is undisputed that the Verified Petition was not filed within one year of the wrongful removal. Respondent removed K.J. from Sweden on or about August 31, 2014. Petitioner initiated this case on February 4, 2016—more than 17 months later.[5] Equitable tolling of the one year period is not available under the Hague Convention, even when the abducting parent conceals the child's location from the other parent. *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1228 (2014).

---

[4] These are the only two exceptions raised by Respondent.
[5] Petitioner filed a previous Petition in the Middle District of Florida, which has since been voluntarily dismissed. That Petition was filed in January of 2016, about 16 months after the wrongful removal. *See* Petitioner's Exhibit 2.

8

The Court must therefore consider whether K.J. is now settled in his new environment. *See id.* at 1234–35 ("Rather than establishing any certainty about the respective rights of the parties, the expiration of the 1-year period opens the door to consideration of a third party's interest, *i.e.*, the child's interest in settlement.").

"[N]othing less than substantial evidence of the child's significant connections to the new country is intended to suffice to meet the respondent's burden of proof." *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1349 (S.D. Fla. 2002). The Court should consider such factors as: (1) K.J.'s age; (2) the stability and duration of K.J.'s residence in the new environment; (3) whether K.J. attends school consistently; (4) whether K.J. has friends and relatives in the new area; (5) K.J.'s participation in community or extracurricular school activities, such as team sports, youth groups, or school clubs; and (6) Respondent's employment and financial stability. *See Fuentes-Rangel v. Woodman*, 617 F. App'x 920, 922 (11th Cir. 2015) (quoting *In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009)); *Bocquet*, 225 F. Supp. at 1349; *Lozano*, 134 S. Ct. at 1236.

During the evidentiary hearing, Respondent testified that K.J. is enrolled in Florida Virtual School ("FLVS"), an online public school. Respondent further testified that K.J. chats online with other FLVS students regarding coursework and participates in Beta Delta Sigma (a math club) and the STEM (science, technology, engineering, and math) club, both of which meet online. Since arriving in the United States, however, K.J. has not been enrolled in or attended a traditional school and has had very little in-person interaction with other children. K.J. does not participate in any team sports, clubs, or other activities aside from those that meet online and does not have any friends locally. Rather, K.J. spends the majority of his time at home with Respondent and with his brother, T.J. In the absence of traditional schooling and with no involvement in outside activities, there does not appear to be a set routine or structure to K.J.'s daily life. *See* Petitioner's Exhibit 12.

9

Aside from Respondent and T.J., the only people K.J. sees with any regularity are his maternal grandparents, who split their time between Florida and Sweden. Respondent presented no evidence of her employment or financial stability, and testified that she does not own the home in Delray Beach where she has been living with T.J. and K.J., that the utilities for that home are not registered in her name, and that she does not own a car.[6]

The evidence presented does not support a finding that K.J. is now settled in the United States. Although he has been in Florida for about a year-and-a-half, K.J. has not established any significant connections here. Respondent has failed to meet her burden of proof as to this exception.

### 2. K.J. Does Not Object to Returning to Sweden

Article 13 of the Hague Convention provides that the Court "may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [his] views." Respondent must establish by a preponderance of the evidence that this exception applies. *See* 22 U.S.C. § 9003(e)(2)(B).

Courts have concluded that children younger than K.J., who is eleven years old, are of such an age and degree of maturity that the Court should take account of their views. *See, e.g.*, *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1259 (M.D. Fla. 2008) (concluding that views of ten-year-old child should be considered); *Mendez Lynch v. Mendez Lynch*, 220 F. Supp.2d 1347, 1362 (M.D. Fla. 2002) (concluding that views of nine-year-old child should be considered). Petitioner nevertheless testified during the evidentiary hearing held March 3, 2016, that he did not believe K.J. was of a sufficient age and degree of maturity.

---

[6] The home is owned by Respondent's mother, in whose name the utilities are registered. The car Respondent drives is also registered in her mother's name.

The undersigned met privately with K.J. in chambers, both on February 29, 2016 (when the evidentiary hearing was originally scheduled to take place), and at the conclusion of the evidentiary hearing held March 3, 2016, and found him sufficiently mature that his views should be taken into account. K.J. is intelligent, articulate, and intellectually curious. He has done very well in the courses he has taken through FLSV and appears to enjoy learning, especially about math, science, and technology. Despite the undoubtedly difficult circumstances in which he now finds himself, K.J. is also very pleasant and well-mannered.

K.J. does not object to returning to Sweden. At most, K.J. is ambivalent as to whether to remain in the United States or return to Sweden. Although he enjoys spending time with Respondent and T.J., K.J. also looks forward to spending time with his sister, Petitioner, Petitioner's girlfriend, and her two children. K.J. enjoys the flexible curriculum available through online education in the United States, but also expressed excitement at the idea of returning to a traditional school in Sweden and establishing friendships with children his age. Such ambivalence in K.J.'s wishes with respect to returning to Sweden is insufficient to meet Respondent's burden of proof as to this exception. *See Lopez*, 547 F. Supp. 2d at 1259.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Verified Petition, Pursuant to the Hague Convention, for Return of Child to the Country of Habitual Residence [DE 1] is **GRANTED**. K.J. shall return to Sweden with Petitioner within ten (10) days after the date of this Order.

2. The United States Marshals Service and all other federal, state, and local law enforcement officers are hereby notified that Petitioner has the authority and the lawful custody to remove K.J. from the United States in order to return him to Sweden. The

United States Marshals Service may disclose K.J.'s full name and other identifying information to other federal, state, and local law enforcement officers to the extent necessary to effectuate this Order.

3. The Clerk of Court is directed to release Petitioner's Swedish passport and K.J.'s Swedish and United States passports, all of which have been deposited in the Court Registry in West Palm Beach, Florida, to Petitioner or Petitioner's counsel.

4. Pursuant to 22 U.S.C. §9007(b)(3), Respondent shall pay necessary expenses incurred by or on behalf of Petitioner, including but not limited to court costs and legal fees. The Court retains jurisdiction to determine the amount to which Petitioner is entitled.

5. The Clerk of Court is instructed to **CLOSE THIS CASE**. All pending motions are **DENIED AS MOOT**, all deadlines are **TERMINATED**, and all hearings are **CANCELLED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 8th day of March, 2016.

Copies furnished to:
Counsel of record
United States Marshal
Clerk of Court

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE